IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAGNE TECHNICAL SERVICES, INC. *d/b/a* ELCON TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA PRESUTTI, RAM INDUSTRIAL SERVICES, LLC *d/b/a* INDUSTRIAL SERVICE SOLUTIONS,<br><br>Defendants. | Civil Action No. 2:24-cv-71<br><br>Magistrate Judge Patricia L. Dodge |

### MEMORADUM ORDER

In this action, Plaintiff Gagne Technical Services, Inc. ("Elcon") alleges that a former employee, Defendant Josh Presutti ("Presutti"), took proprietary information and trade secrets from Elcon and transferred them to his new employer, Defendant RAM Industrial Services, LLC ("RAM"), a competitor of Elcon.

Elcon has moved to compel compliance with an ESI Protocol between Elcon and Defendants. (ECF 42.) The parties' ongoing e-discovery dispute has been the subject of two conferences before the Court (ECF 47, 49), during which the parties were provided with opportunities to explain their respective positions. The issues have also been fully briefed (ECF 44, 51, 52).

### I. Relevant Background

The parties advised the Court in their May 23, 2024 Rule 26(f) Report that they intended to seek the discovery of ESI and had agreed upon an ESI Protocol (ECF 28-1) and a Stipulated Confidentiality Agreement and Protective Order ("Protective Order") (ECF 28-2).[1]

---

[1] The Court entered the Protective Order on May 30, 2024. (ECF 32.)

The ESI Protocol requires the parties to select a mutually agreed upon vendor[2] to investigate devices, accounts, and networks potentially containing Elcon information. Once identified, the ESI Protocol requires Defendants to deliver all devices and provide access to all accounts and networks to the vendor for collection and processing of ESI. (ECF 28-1 ¶ 3.)

The parties identified the following devices, accounts, and network locations to be searched:

a. RAM-issued laptops of Joshua Presutti (2) and Michael Presutti (1);

b. Joshua Presutti's personal email inboxes (2);

c. Joshua Presutti's external hard drive (1);

d. RAM-issued cellular phones of Joshua Presutti (1) and Michael Presutti (1);

e. RAM-issued email accounts for Joshua Presutti (1) and Michael Presutti (1);

f. RAM network shared folders housed on RAM's server:

    i. \\iss.lcl\engineering\Corporate_Engineering
    ii. \\iss.lcl\rotating\Ram\RMCS\Pittsburgh
    iii. \\iss.lcl\Corporate Share\corporate shares\Marketing

Under the ESI Protocol, Elcon was to send Defendants a list of proposed search terms for review and comment. The parties would then endeavor in good faith to resolve any objections to Elcon's proposed terms. Once finalized, the vendor would conduct the search of the devices, accounts, and networks for the date range 10/30/17 to present. (*Id.* ¶ 5.)

Initially, the parties agreed to use Precise Discovery ("Precise") as the e-discovery vendor and conduct a search pursuant to the ESI Protocol. However, after Defendants objected to the quote

---

[2] The ESI Protocol refers to the selected vendor as "the Consultant." *See* ECF 32.

provided by Precise, even though Elcon initially offered to split the cost,[3] they agreed that ArcherHall would be used as the e-discovery vendor after reviewing its proposal.

A month later, despite having received ArcherHall's estimate of total costs before agreeing to using it as the vendor, Defendants objected that ArcherHall's costs were also too high and took the position that Elcon was responsible for the entire cost of the search. At the first status conference regarding the parties' dispute, the Court advised Defendants that they would be required to pay for the services of the vendor but would not be precluded from later seeking to shift these costs.

Elcon states that its proposed search terms are based on the files accessed by Presutti before his departure from Elcon as identified in a preliminary report from bit-x-bit and the projects to which Presutti had access while at Elcon. Defendants have argued that Elcon's 75 proposed search terms[4] are burdensome as they are not narrowly tailored and would likely yield "an unknown volume of documents[.]" (ECF 44 ¶ 35.) At a status conference on January 31, 2025, the Court directed Defendants to provide alternative search terms and indicated that if the parties could not agree, the Court would determine the search terms to be used. Defendants subsequently provided Elcon with alternate search terms that proposed striking 36 of Elcon's terms.[5] The parties did not reach agreement on the search terms.

Another status conference was held on February 18, 2025. While the purpose of the conference was to discuss whether agreement had been reached on search terms, Defendants raised several new issues for the first time. Defendants claimed that execution of the ESI Protocol to

---

[3] Elcon has since rescinded its offer to bear half the cost of e-discovery.
[4] Elcon represents to have sent its proposed search terms to Defendants in August of 2024. (ECF No. 52 at 1.)
[5] *See* ECF No. 51-3.

3

which they agreed would violate preexisting confidentiality provisions in contacts between RAM and third parties. Defendants have been unable to identify, however, the number of RAM's contracts that contain confidentiality provisions or what such agreements require, as "[t]here is no central repository or database housing all of RAM's contracts at issue, so each contract would need to be individually located and examined." (ECF No. 51 at 2.) They suggest that in order to avoid any potential breach of confidentiality, Joshua Presutti and Michael Presutti's RAM-issued email accounts and the RAM network shared folders housed on RAM's server be searched internally by RAM rather than by ArcherHall, the approved vendor.[6]

Defendants argued that "only the **relevant** electronically stored information housed on RAM's Network was the subject of the ESI Protocol." (ECF No. 51 at 6) (emphasis in original). Defendants analogize RAM's server to "a giant filing cabinet that stores everything in the same place[,]" arguing that it would be "oppressive and unduly burdensome" to allow the vendor access to irrelevant information that exceeds the scope of the ESI Protocol. In connection with the proposed internal search, Defendants offered to have Elcon select the software RAM used to perform the search of RAM's Network; broadcast live to Elcon RAM's search of RAM's Network; or record RAM's search of RAM's Network for Elcon's later viewing.

All of these options were rejected by Elcon based on its position that the ESI Protocol should govern the search. Elcon objects to the in-house search of RAM's servers or the use of the software proposed by Defendants. It asserts that documents without machine readable text, such as common PDF files and drawing files, will not be searchable by Defendants' software, and these documents are central to its claims. Further, Elcon argues that Defendants' suggestion that it

---

[6] At the same time, Defendants agree that ArcherHall could perform the search of all other identified devices, accounts, and networks.

4

identify alternative software not only shifts the burden to it but also is a further effort to skirt the parties' agreement, negotiated many months ago, to use an e-discovery vendor.

On the issue of confidentiality, Elcon argues that the Protective Order in this case addresses Defendants' concerns as it relates to confidentiality provisions in contracts with third parties. The Protective Order provides that the parties can designate any confidential information, documents, or other material produced during discovery as either "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY." (ECF 32.) Thus, the parties already contemplated and negotiated a layer of protection for third parties and for any discoverable confidential materials that may be produced during discovery.

The ESI Protocol also acknowledges that:

> The Parties further stipulate and agree that analysis of the Accounts, Devices, and Network by a neutral electronically stored information forensic expert/vendor to be mutually agreed upon by the Parties ("Consultant") may involve the collection, exposition, viewing, and assessment of information that may be sensitive, confidential, personal, proprietary, irrelevant, and/or protected by statutory or other legal privileges. The Parties agree, therefore, that this Protocol shall govern Consultant's analysis, as well as any subsequent treatment, observation, collection, discussion, production, and destruction of ESI contained in the Accounts, Devices, and Network.

(ECF 28-1 at 2.) Further, the parties agreed that other than as set forth in the protocol or subject to a stipulation, the vendor "shall not, directly or indirectly, make available, disclose, or otherwise share with Elcon, its counsel or other representative, or any other third party, any ESI that resides in the Accounts and on the Devices and Network." *Id.* at 4.

## II. Discussion

### A. Search Terms

In response to Elcon's list of search terms, Defendants suggested that projects that were not awarded to RAM should be eliminated. As Elcon points out, however, whether RAM was

ultimately awarded a project is not material nor dispositive because Elcon is entitled to discover what information may have been taken by Presutti and provided to RAM.

As to the search terms "Elcon," "@elcontech.com," and "Gagne," Defendants contend that an additional limiting term must be used in conjunction to narrow the search. But even assuming these three terms would yield a substantial number of results, Defendants have not proposed any such limiting terms, and therefore have given no guidance to the Court on how they may be limited. Further, Defendants' contention that some of the ESI that includes these terms may already be on Elcon's servers is also unavailing, as "Elcon wants to identify forwarded Elcon emails and documents <u>that circulated within RAM</u>." (ECF No. 52 at 8) (emphasis added).

For these reasons, the Court will order that the ESI search be accomplished using the search terms proposed by Elcon.

### B. <u>Use of ESI Protocol</u>

In May of 2024, the parties agreed to the terms of an ESI Protocol for the search of Defendants' ESI. Among other things, the protocol called for the use of a third-party vendor to conduct the search and required the identification of the devices, accounts, and network locations to be searched. As reflected in the protocol, the parties understood that an ESI search might yield confidential or proprietary information.

The parties subsequently agreed on custodians and devices, accounts, and network locations to be searched.

Since then, however, Defendants' shifting positions have created significant delays in effectuating the ESI Protocol. First, after agreeing to an ESI vendor, they protested the resulting expense. After agreeing to an alternative vendor who provided an up-front proposal of the cost of implementing the protocol, they then attempted to shift the entire cost to Elcon. It was only after

being advised by the Court that they would be required to incur these expenses, at least initially, that they raised for the first time that confidentiality provisions in certain, but unidentified, contracts with third parties would necessitate conducting the ESI search internally.

The Court rejects Defendants' proposal to conduct an internal search of RAM's server. When Defendants entered into the ESI Protocol, they agreed that it would be conducted by an outside vendor. The Court certainly understands that the use of an ESI vendor will result in certain costs, but Defendants were made aware of the cost estimates before selecting the vendor, and consistent with the ESI Protocol, agreed to select ArcherHall. Having done so, Defendants cannot now object to the costs and may at a later point seek to shift some or all of the costs to Elcon.

After delays, the parties agreed on an outside vendor and identified the devices, accounts, and networks to be searched. Clearly, as they also acknowledged in the protocol, they understood that the ESI search could yield confidential documents. Presumably they considered their business practices, including the existence of contracts with third parties, as well as their methods of storing ESI, before agreeing to the protocol. Even if they did not do so, however, Defendants' belated raising of this issue is unavailing.

The fact that Defendants possess an unidentified number of contracts with third parties that may have confidentiality provisions of an unknown nature is not sufficient to require the ESI search to be done internally. According to Elcon, the software Defendants intend to use will not yield all potentially relevant documents. Even if this can be remedied, both the ESI Protocol and Protective Order have certain protections in place for confidential information. The Court recognizes that these protections may or may not completely satisfy whatever agreements Defendants may have made with third parties about protecting disclosure of confidential information, but Defendants' concerns can be obviated by an appropriate order from this Court.

Therefore, this 11th day of March, 2025, it is ORDERED that Elcon's Motion to Compel Compliance with ESI Protocol is GRANTED as follows:

1. ESI discovery shall proceed forthwith pursuant to the terms of the ESI Protocol.

2. Defendants shall make available their devices, accounts, and network locations notwithstanding the existence of a contractual provision with a third party that otherwise limits or precludes the search contemplated in the ESI Protocol and in this Order.

3. The search terms proposed by Plaintiff shall be applied to search the following devices, accounts, and network locations:

    a. RAM-issued laptops of Joshua Presutti (2) and Michael Presutti (1);
    b. Joshua Presutti's personal email inboxes (2);
    c. Joshua Presutti's external hard drive (1);
    d. RAM-issued cellular phones of Joshua Presutti (1) and Michael Presutti (1);
    e. RAM-issued email accounts for Joshua Presutti (1) and Michael Presutti (1);
    f. RAM network shared folders housed on RAM's server:
        i. \\iss.lcl\engineering\Corporate_Engineering
        ii. \\iss.lcl\rotating\Ram\RMCS\Pittsburgh
        iii. \\iss.lcl\Corporate Share\corporate shares\Marketing

4. Defendant shall bear the cost associated with performing the searches of all identified devices, accounts, and network locations in accordance with the term of the ESI Protocol but may subsequently seek to shift some or all of this cost.

BY THE COURT:

/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE